947 So.2d 105 (2006)
STATE of Louisiana
v.
Randolph VANCE.
No. 06-KA-452.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2006.
*106 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Randolph Vance, was charged by bill of information with attempted first degree murder of Patrick Peppo in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30 (count one) and with armed robbery of Tanyell Allen in violation of LSA-R.S. 14:64 (count two). The State severed the two counts and proceeded to trial on count two only. After trial, a twelve-person jury returned a unanimous verdict of guilty as charged. After the *107 denial of defendant's motion for new trial, he was sentenced for his armed robbery conviction to imprisonment for 75 years with the Department of Corrections, to be served without the benefit of parole, probation or suspension of sentence. Defendant was later granted an out-of-time appeal.
The following was adduced at trial. On Saturday, September 20, 2003 at approximately 9:30 a.m., Tanyell Allen, a teller at Bank One in Harahan on Jefferson Highway, was robbed. The bank reported a loss of $1,345.00.[1]
Tanyell Allen identified defendant in court as the robber who came into the building and then to her teller station wearing a baseball cap and a tan shirt with a character on the front of it. According to Ms. Allen, defendant showed her a note that said "I have a gun" and then raised his shirt to show her the gun in his waistband. After she looked at the note, defendant took the note back, telling her to give him the money and to hurry. He left after she gave him all the money in the top drawer, including a dye pack. Ms. Allen then pressed the security button and told her manager they had just been robbed. She gave a description of the robber to the police after they arrived.
Hope Favorite, a bank employee, testified that at about 9:30, Tanyell Allen yelled she had been robbed and pointed to the man leaving the doors. She described the man as wearing light brown, khaki colored clothing. She remembered the man was standing in line and recalled he was well-dressed. She recognized his face as someone who had been in the bank prior to that day, asking about Saturday hours. Ms. Favorite identified the robber through a photographic lineup after the robbery and identified defendant in court. She explained that she noticed him because he was black and as a black employee herself she did not see many black people come into that bank. She also admitted she was determining whether she thought him to be attractive.
On the day of the robbery at 9:00 a.m. or a little after, Patrick Peppo was driving his truck to work when he saw someone running with a bag with red smoke coming out of it. He saw defendant, whom he identified in court, throw something under a truck and then drive past him after he left in a blue Chevrolet truck going towards River Road. Mr. Peppo saw money on the ground and something red on the money and on the ground. After realizing what had happened, he followed defendant. He called 911 and tried to get close enough to see the truck's license plate. After going at speeds probably over 80 miles per hour, defendant slowed down, almost coming to a stop and reached out of his window. Something hit the front of Mr. Peppo's truck, and the truck began hissing. Because he got the license plate number, Mr. Peppo felt this was enough and he pulled off of the road. Defendant looked at Mr. Peppo and then fled. Mr. Peppo stated that this person, the defendant, was the same one that he saw throw something underneath the truck. Mr. Peppo returned to the area where he saw the money and observed money flying in the street and grass. He picked up some of the money and the dye pack and called 911 again. When the police arrived, he told them what happened and gave them the money he recovered. There was a bullet hole in the grill of his truck where it had been shot. The bullet went through the radiator, and a bullet fragment was seized from on top of the engine inside of his truck.
*108 After Mr. Peppo observed an individual coming from the area of the bank and got his license plate number, FBI Agent Wendell Cosenza developed a suspect in this case based on that information. The license plate was run and came back to a blue Chevrolet pickup truck registered to defendant. Defendant's residence was placed under surveillance. On Monday morning, defendant called his wife's cell phone and had a conversation with an FBI agent who was at the residence. Defendant provided his location in Mississippi. Defendant's truck was located. The license plate which was on the truck was determined to be a stolen plate and was not the same number given by Mr. Peppo. Defendant was arrested in Mississippi at a Texaco station after turning himself in on Monday at about 12:30 p.m.
Defendant's cousin, Deborah Parrish, testified that defendant came to Mississippi on a Sunday morning and said he was there on vacation. Another cousin, Oscar Womack, testified that defendant met him in Vicksburg on September 22, 2003 at Harrah's casino. After gambling, they went to another casino. According to Mr. Womack, defendant used his cell phone to call his wife. After defendant got off of the telephone, defendant told him the FBI was at his house and that "he had shot at some n* * * * * * over there."
In his first allegation of error, the defendant alleges that the trial court imposed an excessive sentence. He argues that his 75-year sentence amounts to life imprisonment for a property crime, given his age at the time of sentencing of approximately 33 years old. He contends that he is not the most blameworthy of individuals nor is the offense the most horrific. He notes that no one was hurt.
The State responds that the trial judge complied with the guidelines of LSA-C.Cr.P. art. 894.1, and that the sentence is not severe compared to the facts of the case. It provides that the record supports the sentence imposed, and the sentence is not excessive.
This Court has recognized that the failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 465, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243 (citation omitted). In the present case, defendant made an oral motion to reconsider sentence and provided he would file one in writing. Thereafter, the trial court denied defendant's motion to reconsider sentence. Defendant's oral motion did not state specific grounds for which his motion was based. Accordingly, defendant's sentence is reviewed only for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. Id. (citation omitted).
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing the sentence. State v. Allen, 868 So.2d at 879. (citation omitted). In reviewing a trial court's sentencing discretion, *109 three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id. at 880. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed, even when the trial judge does not provide reasons for the sentence. State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 933, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192 (citations omitted). The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Allen, 868 So.2d at 879-880.
LSA-R.S. 14:64(B), provides that "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." Here, the trial court sentenced defendant to 75 years with the Department of Corrections without benefit of parole, probation or suspension of sentence. In sentencing the defendant, the court noted that he committed armed robbery with a firearm[2]. The court further said that:
That type of conduct will not be tolerated by the Court in this parish. The people of Jefferson Parish, to the greatest extent that I'm able, will not be subjected to that type of intimidation or danger. My sentence is based squarely on the facts of this case as established at trial.
Defendant received a 75-year sentence for a crime which has a maximum sentence exposure of 99 years imprisonment. Defendant walked into a bank armed with a gun, putting bank employees and customers at risk of death or great bodily harm. In fleeing the crime scene, defendant discharged his weapon at a witness who was following him, striking the witness' truck. At this point, defendant put this witness' life in danger as well as the public in firing his weapon while driving on the road.
Armed robbery has been recognized by this Court as a serious offense against the person. State v. Francois, 01-807 (La. App. 5 Cir. 4/10/02), 817 So.2d 213, 216. We find that defendant's sentence was within the statutory limits and does not shock its sense of justice, and therefore the trial court did not abuse its discretion in sentencing defendant to 75 years imprisonment for his armed robbery conviction. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04), 880 So.2d 903, writ denied, 04-2220 (La.1/14/05), 889 So.2d 266.
In his second assignment of error, defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. We have reviewed the record and find no errors which warrant our attention.[3]
*110 For the above discussed reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] $250.00 was recovered from witness Patrick Peppo.
[2] The nature and background of the offender is not reflected in the record. However, at the sentencing hearing the State notified the court and the defendant of its intent to file a multiple bill.
[3] The record does not indicate that the jury was sworn as required by LSA-C.Cr.P. arts. 788 and 790; however, the issue of jury irregularities was not raised in the trial court or on appeal. Accordingly, we refuse to consider the issue. See, State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 771, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.

Also, although the trial court did not say "at hard labor" when sentencing defendant, as reflected in the commitment, he did agree the sentence was to be served in the custody of the "Department of Corrections." In State v. Upchurch, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 403, this Court determined that, while the transcript did not specifically state the sentence was to be served at hard labor, it did provide the sentence would be served in the Department of Corrections. "Only individuals actually sentenced to death or confinement at hard labor shall be confined to the Department of Corrections." Id. (citing LSA-R.S. 15:824(C); State v. Boyd, 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80). Accordingly, we need not remand the matter for resentencing.