SUSAN M. CHEHARDY, Judge.
laOn appeal, defendant challenges his conviction for attempted second degree murder and his multiple offender adjudication. Upon review, we affirm his underlying conviction and multiple offender adjudication but vacate defendant’s underlying and enhanced sentences.

Facts

At trial, Larry St. Amant testified that, on September 4, 2006, which was Labor Day that year, he was driving his sister’s champagne-colored Cadillac, traveling west on Jefferson Highway toward Ken-ner. He was driving in the far right-hand lane when a white vehicle pulled up on the left side of his vehicle and a person “started firing” a handgun at him.
Mr. St. Amant stated that, when the first bullet shattered the driver’s side window, he “leaned down towards the passenger seat and hit the gas” and continued to travel west on Jefferson Highway. The next thing that St. Amant remembered, he *632 stopped the car,[1] exited, and “started running” toward McDonald’s [ ^.Restaurant on the corner of Jefferson Highway and Causeway Boulevard. St. Amant entered the side door of the McDonald’s, ran through the restaurant, and exited by the back door.
Ms. Jayda Williams, the shift manager at McDonald’s on September 4, 2006, testified that, on the night in question, she saw a black man run into the restaurant from a side door then exit through the back door. After she “ducked down” behind the register at the front counter, she saw another black man, who was carrying a gun, enter the restaurant and state, ‘You can’t run for long.” The man with the gun did not raise his gun or threaten anybody just exited the restaurant and drove off in a white vehicle.[2] Eventually, the victim returned to McDonald’s.[3] Jefferson Parish Sheriffs deputies arrived shortly thereafter.
After EMS transported Mr. St. Amant to the emergency room, the attending physician determined that Mr. St. Amant had been shot in his hand and both of his elbows. St. Amant showed the scars from his injuries to the jury.
When Mr. St. Amant spoke with Deputy Lamar Hooks of the Jefferson Parish Sheriffs Office on the scene, he informed them that he could not describe the suspect’s vehicle and did not know who shot him. Deputy Hooks inspected the victim’s vehicle. He observed a significant amount of blood in the front seat area of the vehicle, including on the console, on the passenger’s seat and on the driver’s door handle. On the floor of the vehicle, Deputy Hooks observed glass fragments from the driver’s door window, which had been shattered. Deputy Hooks further testified that there was a bullet hole in the driver’s side door of the vehicle and a projectile was found in the “chrome moulding [sic]” area of the driver’s door. However, he did not find a weapon or casings in the vehicle. Deputy Hooks also ^searched near the intersection of Labarre and Jefferson Highway where the shooting began. However, he did not find any casings or bullets in that area.
St. Amant further testified that, when he spoke with Detective Dave Morales on September 6, 2006, he admitted that he knew the man that shot him. At that point, he identified the shooter as defendant herein, Bennie Bannister. St. Amant stated that he knew defendant because St. Amant has a child with the man’s niece, Danielle Bannister. Thereafter, Detective Morales obtained an arrest warrant for defendant for attempted murder.
At trial, Detective Morales testified that he received a call on September 19, 2006, from a man who identified himself as defendant who admitted that he “had shot Larry St. Amant on Jefferson Highway by McDonald’s.” Furthermore, he told Detective Morales that “he was going to go to California, get money for an attorney and *633 then turn himself in.” However, defendant never turned himself in.
Robin Anderson, defendant’s best friend of 19 years, testified that in the month and a half leading up to the night of the incident, defendant indicated that he was afraid that St. Amant was following him and wanted to harm him. However, she never saw St. Amant following defendant. She testified that she believed defendant when he told her that he was in fear for his life because of St. Amant. Furthermore, defendant told her that he did not want to kill St. Amant, he just wanted St. Amant to leave his family alone.
At trial, Lieutenant Danny Jewell of the Jefferson Parish Sheriffs Office, Narcotics Division, testified that, on December 6, 2006, his team arrested defendant at the Beechgrove Apartments in Jefferson Parish. After Lt. Jewell read defendant his rights, defendant stated that he shot St. Amant because he believed St. Amant was stalking him “in order to do him harm.” He further testified that the | ^police recovered a 9 mm handgun from the apartment where defendant had been residing.
The State and defense counsel entered into two stipulations regarding the handgun. They stipulated that Louise Waltzer is an expert in firearms identification who determined that the projectile found in the victim’s vehicle was fired from the 9 mm handgun recovered in the defendant’s Bee-chgrove apartment. The State and defense counsel further stipulated that Sarah Corgan, who is an expert in the field of forensic DNA analysis, would have testified that DNA obtained from the slide of the 9 mm semi-automatic handgun was consistent with the DNA profile of the defendant.

Procedural History

On February 1, 2007, a Jefferson Parish Grand Jury indicted defendant, Bennie Bannister, in a true bill of information, on one count of attempted second degree murder, in violation of La. R.S. 14:27:30.1, for the attempted homicide of Larry St. Amant.[4] At his arraignment, defendant entered a plea of not guilty.
On February 9, 2011, defendant proceeded to trial for the attempted second degree murder of Larry St. Amant. After a three-day trial, a twelve-person jury found defendant guilty as charged. On February 23, 2011, the trial court sentenced defendant to 25 years in the Department of Corrections.[5] At that time, the State filed a bill of information alleging that defendant was a second felony offender and defendant denied those allegations.
|fiOn April 27, 2011, after a hearing, the trial court found that the State presented sufficient proof that defendant was a second felony offender and adjudicated defendant as such. On May 11, 2011, the trial court sentenced defendant to 35 years imprisonment in the Department of Corrections.[6] This timely appeal follows.
*634 On appeal, defendant rafees four assignments of error: first, the evidence was insufficient to support the verdict in that it failed to prove beyond a reasonable doubt that the shooting of St. Amant was done with the specific intent to kill and not done in self-defense; second, the State failed to prove that the ten-year cleansing period had not run; third, the trial court imposed an excessive sentence; and finally, it was error to sentence appellant immediately following the denial of the Motion for New Trial without “honoring the 24-hour[sic] delay required by La.C.Cr.P. Art. 873.[sic]”

Law and Analysis

In his first assignment of error, defendant argues that the evidence was insufficient to support the verdict beyond a reasonable doubt for two reasons: first, the State failed to prove his specific intent to kill St. Amant and, second, the State failed to refute his claim of self-defense.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence viewed in the light most favorable to the prosecution was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
17Pefendant was convicted of attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1. Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Any person who, having a specific intent to commit a crime, does ... an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. La. R.S. 14:27. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).
Regarding defendant’s first claim, to prove attempted second degree murder, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. State v. Hebert, 05-1004, p. 9 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1046. Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but second degree attempted murder requires a specific intent to kill. Id., 05-1004 at 9, 930 So.2d at 1046-17.
Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118, p. 48 (La.4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Batiste, 06-869, p. 6 (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27. Specific intent to kill may also be inferred from the extent and severity of the victim’s injuries. State v. Stacker, 02-768 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, writ denied, 03-411 (La.10/10/03), 855 So.2d 327.
First and foremost, defendant admits to firing a handgun at the victim while both men were driving down a heavily-travelled highway in Jefferson Parish. The evidence also reflects that the projectile found lodged in the chrome molding of the ^victim’s driver’s side door was fired from a handgun which was handled by defendant and found in defendant’s dwelling. Finally, defendant’s specific intent to kill the victim can be inferred from the *635 fact that the defendant deliberately pointed a gun at the victim and fired it. Hoffman, supra; Batiste, supra. Based on the foregoing, we find the evidence when viewed in the light most favorable to the prosecution was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant had the specific intent to kill the victim.
Regarding defendant’s second claim, defendant argues that his actions were justified because they were committed in self-defense. Specifically, he asserts that he was “stalked by St. Amant who brandished a weapon at him as he peaceably drove down the highway.” He further argues that he was fearful for his life and fired in self-defense, “causing St. Amant very minimal injury.”
The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19 A. When self-defense or the defense of another is claimed by the defendant in a non-homicide case, the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. State v. Steele, 01-1414 (La.App. 5 Cir. 9/30/02), 829 So.2d 541, 547, writ denied, 02-2992 (La.9/19/03), 853 So.2d 632.
In this case, the evidence presented at trial does not reveal that the victim was committing a forcible offense against defendant or another to justify the force used by the defendant against the victim. First, St. Amant testified that he did not |9possess a gun or weapon in his vehicle before or during this incident. Second, the evidence obtained by Deputy Hooks, who did not find a weapon in the victim’s vehicle or on the victim’s person on the night of the incident, corroborates that statement. Third, there were no bullet holes in the defendant’s vehicle and none of the windows were blown out, which supports the victim’s statement that he did not fire on the defendant during the incident. As such, viewed in the light most favorable to the prosecution, a rational trier of fact could find that defendant failed to prove by a preponderance of evidence that he acted in self-defense. We find that this assignment of error lacks merit.
In his second assignment of error, defendant argues that his multiple offender adjudication should be vacated because the State failed to prove that ten years had not lapsed between his relevant convictions. Defendant argues that the State failed to prove the date of defendant’s “discharge from supervision” on the 1996 predicate felony, which means that the State was unable to prove that ten years had not lapsed between his convictions.
In order for a defendant to be adjudicated as a habitual offender, the State is required to prove the existence of a prior felony conviction and that defendant is the same person who was convicted of the prior felony. See State v. Nguyen, 04-321, p. 19 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 912, writ denied, 05-0220 (La.4/29/05), 901 So.2d 1064. At the multiple bill hearing, Aischa Prudhomme, a latent print examiner for the Jefferson Parish Sheriffs Office, established, through comparison, that the fingerprints taken from defendant in court on the date of the hearing matched prints taken in conjunction with defendant’s conviction for possession with intent to distribute cocaine. Thus, the State established defendant’s *636 identity as the person who committed the prior felony. Nguyen, supra.
JjThe State bears the burden of proving that the predicate convictions fall within the “cleansing period” delineated in La. R.S. 15:529.1(0). State v. Hollins, 99-278, p. 21 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587. This ten-year “cleansing period” begins to run from the date that a defendant is actually discharged from state custody and supervision.[7] State v. Anderson, 349 So.2d 311, 314 (La.1977); State v. Thomas, 04-1341, p. 15 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 906, writ denied, 05-2002 (La.2/17/06), 924 So.2d 1013.
At the habitual offender hearing, the State produced a certified copy of defendant’s conviction in Twenty-Fourth Judicial District Court case number 96-2122, which reflected that defendant entered a guilty plea to the predicate offense on July 9, 1996. The trial court sentenced defendant to five years imprisonment, which was suspended, and defendant was placed on active probation for three years.
The State also introduced a certified copy of an October 1, 1998 minute entry indicating that defendant appeared before the Court on that date for probation revocation hearing in the same case. On October 1, 1998, the trial court held defendant in contempt of court and sentenced defendant to 30 days in parish prison.
The State also introduced a certified copy of “Verification of First Offender Pardon,” stating that, effective August 1, 1999, defendant was fully pardoned for the offense in case no. 96-2122. Finally, the State introduced a certified copy of the bill of information for the underlying offense of attempted second degree murder, which indicated that the offense was committed on September 4, 2006.
|T1At the hearing, defense counsel objected to the introduction of certified copies of defendant’s predicate conviction on the basis that Ms. Prudhomme is not a custodian of records and cannot authenticate the documents. Defense counsel asserted that there was “not sufficient documentation provided by the State nor sufficient testimony adduced through [the] hearing to affirmatively prove that the cleansing period did not run in this matter.”
On appeal, defendant contends that the State failed to prove the date of defendant’s “discharge from supervision.” We disagree.
La. R.S. 15:572(D) provides, in pertinent part:
On the day that an individual completes his sentence, the Division of Probation and Parole of the Department of Corrections, after satisfying itself that (1) the individual is a first offender as defined herein and (2) the individual has completed his sentence shall issue a certificate recognizing and proclaiming that the petitioner is fully pardoned for the offense, and that he has all rights of citizenship and franchise, and shall transmit a copy of the certificate to the individual and to the clerk of court in and for the parish where the conviction occurred. This copy shall be filed in the record of the proceedings in which the conviction was obtained.
State v. Lemoine, 05-265 (La.App. 5 Cir. 11/29/05), 919 So.2d 727, 728, writ denied, 05-2564 (La.9/15/06), 936 So.2d 1254.
*637 Here, the State presented a certified copy of the defendant’s first-offender pardon for the predicate offense, which was issued on August 1, 1999. Because the statute mandates that the Department of Corrections issue the certificate of pardon on the day an individual completes his sentence, it is proof of the date of discharge from state supervision. Id. Further, the State presented evidence that the underlying offense was committed on September 4, 2006, which is within ten years of the discharge date of August 1, 1999. Accordingly, the trial court did not err in finding that the State proved that defendant was a second-felony offender. This assignment lacks merit.
Iisln his third assignment of error, defendant argues that the trial court imposed an excessive sentence. Defendant argues that his sentence is excessive given that (1) he only has one prior felony conviction for simple possession of cocaine from 1996; (2) the circumstances of the offense are not likely to recur; and (3) the victim was not entirely blameless and only suffered minimal injury.
In the present case, defendant did not file a motion to reconsider sentence in the trial court. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. La.C.Cr.P. art. 881.1;[8] State v. Ragas, 07-3, p. 10 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 272, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732, cert. denied, 555 U.S. 834, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008).
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Warmack, 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court’s sense of justice. The trial judge is afforded wide discretion in determining sentences, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Berry, 08-151, p. 17 (LaApp. 135 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La.4/3/09), 6 So.3d 767.
In considering the trial court’s sentencing discretion, the reviewing court should consider 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Williams, 03-3514, p. 14 (La.12/13/04), 893 So.2d 7, 16. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Berry, supra. The issue on appeal is whether the trial *638 court abused its discretion, not whether another sentence might have been more appropriate. Warmack, 07-811 at 8, 978 So.2d at 109.
In the present case, defendant was originally sentenced to 25 years imprisonment for his conviction of attempted second degree murder. Thereafter, at the multiple bill hearing, defendant was adjudicated a second felony offender based on his underlying conviction of attempted second degree murder, La. R.S. 14:27(D)(l)(a)[9] and La. R.S. 14:30.1(B),[10] and his predicate conviction of possession with intent to distribute cocaine. As a second felony offender, defendant faced a habitual offender sentencing range between 25 and 100 years under La. R.S. 15:529.1(A)(1).[11] Therefore, defendant’s sentence of 35 years is a low-range sentence.
^J^Similarly situated defendants who have been convicted of attempted second degree murder and sentenced as second felony offenders have received greater sentences. See, State v. Snyder, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1090 (50 years at hard labor for second felony offender not constitutionally excessive where offender, who was on parole, was convicted of attempted second degree murder for firing three shots at the victim in a drug-related incident); State v. Tyler, 01-1038 (La.App. 5 Cir. 3/26/02), 815 So.2d 205 (60 years at hard labor for second felony offender not constitutionally excessive for defendant convicted of attempted second degree murder for stabbing his girlfriend’s daughter and his girlfriend seven times).
Here, defendant, while driving on a major thoroughfare in Jefferson Parish, fired a gun into the victim’s vehicle, wounding the victim in the hand and both of his elbows. Defendant, while still armed, also pursued the victim on foot into a crowded fast-food restaurant. Both of these actions show a disregard for the victim as well as the public in general. Considering the jurisprudence and the circumstances of the present case, we find no abuse of the trial court’s discretion in defendant’s 35-year sentence. This assignment lacks merit also.
Finally, in his fourth assignment of error, defendant argues that it was error to sentence appellant immediately following the denial of the Motion for New Trial without “honoring the 24 hour[sic] delay required by La.C.Cr.Pro. Art. 873.”[12] We agree. See, State v. Jones, 07-271, p. 10 *639 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149. This error will be addressed in the discussion on errors patent, infra.
|1ñAs is our routine procedure, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. First, neither defendant’s underlying sentence nor his enhanced sentence was imposed without restriction of parole, probation, or suspension of sentence as required by La. R.S. 14:30.1 and La. R.S. 15:529.1(G). No correction is mandated, however, since, under La. R.S. 15:301.1, statutory restrictions on probation, parole, or suspension of sentence are self-activating.
Next, we note that, after denying defendant’s motion for new trial, the trial court failed to observe the statutorily-mandated delay under La.C.Cr.P. art. 873 before sentencing defendant on the underlying attempted second degree murder conviction. This error requires vacating the underlying sentence and remanding for resentencing.
Further, the trial court imposed the enhanced sentence without vacating defendant’s original sentence as required by La. R.S. 15:529.1(D)(3). Where the original sentence on the underlying offense has not been vacated at the time of defendant’s sentencing as a multiple offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void. State v. Boss, 03-133, pp. 6-7 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 79, writ denied, 03-1968 (La.5/14/04), 872 So.2d 508.
Accordingly, because there was error at sentencing on both the underlying offense and multiple offender adjudication, we vacate the underlying sentence and the multiple offender sentence and remand the matter for resentencing on the underlying conviction and multiple offender adjudieation. See Boss, supra, and State v. Young, 08-387, p. 2 (La.App. 5 Cir. 9/16/08), 996 So.2d 302, 304 n. 1, writ denied, 09-0631 (La.1/8/10), 24 So.3d 863. In all other respects, defendant’s conviction and multiple offender adjudication are affirmed.
| ^AFFIRMED; SENTENCES VACATED AND MATTER REMANDED FOR RESENTENCING

.Although Mr. St. Amant could not remember how or where he stopped his vehicle, an eyewitness who was standing in front of the bar next to McDonald’s on Jefferson Highway told police that he saw a vehicle “locking up the brakes” and trying to make a U-turn on Jefferson. As the bystander watched, the vehicle ran over a yield sign on the neutral ground then, after turning, collided with another vehicle traveling east on Jefferson Highway towards the parish line. The bystander did not see where the vehicle actually stopped.

. Two separate witnesses testified that they saw a white vehicle pull into the parking area of McDonald's. A black male with a gun exited that vehicle and entered McDonald’s.

. At trial, the State introduced photographs and played the restaurant's surveillance tapes of the incident.

. In that same bill, defendant was also indicted on one count of second degree murder, in violation of La. R.S. 14:30.1, for the homicide of Alvin Clark, Jr., to which he pled not guilty at arraignment. On February 7, 2011, the trial judge severed the two counts for trial. On May 11, 2011, the State dismissed the second degree murder charge against defendant.

. Only those individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections. La. R.S. 15:824(C); State v. Vance, 06-452, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, 109 n. 3, writ denied, 07-0152 (La.9/28/07), 964 So.2d 351.

.Only those individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections. La. R.S. 15:824(C); State v. Vance, 947 So.2d at 109 n. 3.

. Discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation or good time credit, or it could take place later because of parole revocation. State v. Humphrey, 96-838, p. 13 (La.App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, writ denied, 97-1461 (La. 11/7/97), 703 So.2d 35.

. According to La.C.Cr.P. art. 881.1(E), the “[fjailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”

. La. R.S. 14:27(D) states: "Whoever attempts to commit any crime shall be punished as follows: (l)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.”

. La. R.S. 14:30.1(B) states: "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”

. La. R.S. 15:529.1(A)(1) states, "If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.” In the present case, "not less than one-half the longest term” is 25 years and "not more than twice the longest term” is 100 years.

.La.C.Cr.P. art. 873 reads, in pertinent part: "If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.”