SUSAN M. CHEHARDY, Judge.
|20n appeal, defendant challenges the trial court’s denial of his motions to suppress evidence and statements. For the following reasons, we affirm.

Facts

Here, defendant pled guilty without proceeding to trial. The following facts were gleaned from the prosecutor’s recitation of the factual basis for the charges against defendant, delivered during the guilty plea proceeding.
On July 27, 2011, task force agents were patrolling Heather Avenue in Westwego, looking for Nathan Rhodes, an individual identified by police as the same person that sold narcotics to undercover officers several days earlier. When the agents arrived at 7882 Heather Avenue, they saw three men, who were subsequently identified as Ruben Marshall, Nathan Rhodes, and Prentiss Page, standing in front of the house. Immediately after these men observed the officers, the men went into the house.
As the agents exited their vehicles, a fourth man, later identified as Jules Gibson, defendant herein, ran into the residence. One of the officers observed the man, who was carrying a black backpack, placing his right Rhand on a black pistol grip that protruded from his waistband. The officer announced, “Police; stop.”
Instead of stopping, however, defendant dropped the backpack onto a chair in the dining room and placed the firearm into a nearby shoebox. Defendant continued to run and exited through the back door of the house.
The task force agent declined to pursue defendant and opted to secure the firearm and the black bag. When the agent searched the shoe box, he seized a Smith and Wesson, Model 915, nine millimeter semiautomatic. When the agent searched the black bag, he seized several bags: one contained small, off-white rocks, which was later determined by the crime lab to total 27 grams of cocaine; another contained green vegetable material, later determined to be 20 grams of marijuana; and the third bag contained nine pills, later identified by the crime lab as diazepam.
The task force agent that stopped the fleeing defendant seized $5,026.00 in cash from defendant’s person. Defendant, who admitted that he was not employed, was unable to explain the source of money or why he was carrying so much cash.

Procedural History

On August 25, 2011, the Jefferson Parish District Attorney filed a four-count bill of information charging defendant, Jules J. Gibson, in Count One, with possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A); in Count Two, with possession with intent to distribute marijuana, in violation of La. R.S. 40:966(A); in Count Three, with possession of a firearm by a convicted felon,[1] in violation of La. R.S. 14:95.1; and, in Count Four, with possession of Rdiazepam, in violation of La. R.S. 40:969(C). At arraignment, defen *646 dant pled not guilty to all charges. On February 8, 2012, defendant’s motions to suppress evidence and statements were heard and denied.
On March 5, 2012, defendant withdrew his former pleas and entered pleas of guilty as charged on all four counts, reserving his right to appeal the trial court’s denial of his motions to suppress under State v. Crosby.[2] That same day, the trial judge sentenced defendant “to 15 years in the Department of Corrections[3] on Counts 1 and 2, ten years in the Department of Corrections on Count 3, five years in the Department of Corrections on Count 4.” The trial judge ordered the sentences to run concurrently “with one another and with any other time you’re presently serving with credit for time served.” On March 13, 2012, defendant’s motion for appeal challenging the denials of his motions to suppress was granted. This appeal follows.

Law and Argument

In his sole assignment of error, defendant argues that the trial court erred in failing to grant the defense’s motion to suppress the evidence because the evidence was illegally retrieved. Defendant specifically argues that the police lacked reasonable suspicion to conduct an investigatory stop of him or his friends. Further, defendant contends that, when the police officers approached and chased him into the house, he was under arrest and not free to leave. He argues that there was no probable cause for the instant arrest so the resulting evidence was illegally obtained and should have been suppressed as “fruits of the poisonous tree.”
| ¿The State responds that the officers had reasonable suspicion to justify an investigatory stop of defendant and the others once they witnessed an apparent hand-to-hand transaction within the group of men outside of the house located in a high crime area. The State further points out that, at least one officer observed the defendant reaching for a handgun lodged in his waistband as he fled into the house, which ripened their suspicion into probable cause for his arrest. The State contends that the officer’s immediate entry into the home in pursuit of defendant was justified by the ‘hot pursuit’ exception.
Further, at that point, exigent circumstances were present, including preventing the defendant’s flight and the destruction of evidence, existed that allowed the war-rantless entry. The State argues that, because the entry into the home was lawful, Agent Biondolillo could lawfully seize the gun and narcotics, which were abandoned by defendant. Finally, the State provides that the money found in defendant’s possession was legally seized during a search incident to a lawful arrest.
On February 8, 2012, a hearing was held on defendant’s motions to suppress evidence and statements. At this hearing, the State presented the testimony of Detective David A. Biondolillo, Sr. of the Jefferson Parish Sheriffs Office. Detective Biondolillo, who had been with the Sheriffs Office for approximately 12 years, testified that, on July 27, 2011, he was working in the Narcotics Division on a “HIDTA” task force.
Detective Biondolillo explained that he and Detective Leon James, of the Jeffer *647 son Parish Sheriffs Office,[4] were in a marked police car, patrolling the Harbor Estates neighborhood in Westwego, Louisiana that night. According to | (¡Detective Biondolillo, they were looking for dealers from whom they had made controlled purchases of narcotics in the past several weeks.
That night, as they turned onto Heather Avenue, he and Detective James observed a “group of guys” outside of the residence located at 7882 Heather Avenue. Detective Biondolillo testified that one of the guys, later identified as Rubin Marshall, immediately walked inside the residence. He further testified that, as they stopped in front of the house, he noticed that one of the guys looked like Nathan Rhodes, one of the “targets” who had previously sold them drugs. At that point, Nathan Rhodes and another man, identified later as Prentiss Page, went inside of the house.
Detective Biondolillo testified that, as he and Detective James exited the car, he observed one of the men, who was later identified as defendant, “kind of running” toward the front door of the house. Detective Biondolillo said that, as defendant ran into the house, Biondolillo saw “a black pistol grip in [defendant’s] right hand around his waistband.” Once he saw the gun, Detective Biondolillo followed defendant into the house.
According to Detective Biondolillo, he followed defendant into the house where he observed defendant dropping the black backpack he had been carrying on his back onto a chair and throwing the gun into a shoe box. Defendant immediately exited the house. Detective Biondolillo secured the backpack and the gun, while yelling to Detective James, who was outside, that defendant was fleeing through the back door. Detective Biondolillo described the gun as a “substantial pistol.” Further, the bag contained packages of crack cocaine, marijuana, and pills.
17Meanwhile, another third JPSO officer, Sergeant Wilson, apprehended defendant down the street and advised him of his Miranda rights.[5] When Sergeant Wilson searched defendant, he recovered a “[s]ub-stantial amount” of money. Detective Biondolillo believed that it was around $5000.00. When defendant was questioned about the source of this money, defendant stated that he did not work and could not explain the source of the case. Further, defendant stated that the bag in question was not his but he had just received it from “a girl down the street” right before the detectives’ arrival.
Detective Biondolillo testified that, once the suspects were apprehended, he obtained consent to search the premises from the residents of the house. Further, the officers obtained a search warrant. However, the subsequent search did not reveal further contraband.
Detective James testified that while he and Detective Biondolillo were patrolling in the Westwego area in a marked unit they observed several “suspicious” subjects “huddled together,” in front of a house “with the front door open” like maybe a “hand-to-hand transaction” was happening. Detective James did not observe defendant in possession of a firearm.
Defendant argued that the police lacked reasonable suspicion to investigate the group and probable cause to follow defendant into the house without a warrant. He further argued that, if the officer observed *648 defendant’s weapon then the weapon was not concealed, and defendant could not be arrested for carrying a concealed weapon. Defendant argued that there were no exigent circumstances to allow entry into the house and the constitutional violation that happened when the detective entered the house could not be fixed with the consent or the search warrant after |sthe fact. The State argued that Detective Biondolillo’s testimony presented probable cause and exigent circumstances and, therefore, the search was proper.
The trial court denied defendant’s motions to suppress evidence and statements. Defendant objected to both rulings.
La.C.Cr.P. art. 708(D) provides that: “[o]n the trial of a motion to suppress ... the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.” A trial court’s findings of fact based , on the weight of the testimony and the credibility of the witnesses at a suppression hearing are entitled to great weight, considering the district court’s opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Wells, 08-2262 (La.7/6/10), 45 So.3d 577, 581; State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94. “[A] reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.” Wells, supra.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Wolff, 09-508 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 901. Warrantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Id.
The right of law enforcement officers to stop and interrogate those reasonably suspected of criminal activity is recognized by La.C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
|flThe Terry standard, as codified in La.C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. State v. Dickerson, 10-672 (La.App. 5 Cir. 4/26/11), 65 So.3d 172, 176. “‘[T]he threshold of one’s dwelling ... as is the yard surrounding the house,’ are public places under the cases interpreting the Fourth Amendment.” State v. Parnell, 07-37 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1098, writ denied, 07-1417 (La.1/7/08), 973 So.2d 733 (quoting U.S. v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976)).
Investigatory stops require reasonable suspicion of criminal activity. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from governmental interference. Boss, supra (quotation omitted). Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. Id.
*649 The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Sam, 08-220 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. In determining whether an officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. Id.
A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that linmight elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop. Id. at 769-70.
When evaluating the totality of the circumstances, a defendant’s evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Enclade, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13. The Louisiana Supreme Court has recognized that it has expressly held or at least implied that the defendant’s flight from police officers is the most important factor in the totality of the circumstances analysis. State v. Morgan, 09-2352 (La.3/15/11), 59 So.3d 403, 408. “Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.” Morgan, 59 So.3d at 409. An even greater level of suspicion attaches to unprovoked flight because it is not a mere refusal to cooperate or an assertion of one’s right to walk away. Id. “Headlong flight — wherever' it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000).
Defendant argues that the officers did not have reasonable suspicion to stop defendant. We disagree.
The testimony at the suppression hearing revealed that JPSO officers were patrolling the area in marked police vehicles looking for “targets” that had sold them narcotics in the previous weeks. During this patrol, the detective recognized one of the men in front of the house who wore a distinctive hairstyle as a “target” who had sold them drugs. When the officers approached, the men who were Incongregating outside of the residence fled. The “target” and this defendant both entered the front door of the residence. Further, one officer observed that defendant was reaching for a gun in his waistband.
Finding that the officers had sufficient reasonable suspicion to justify an investigatory stop, we move next to determine whether Detective Biondolillo had sufficient probable cause to justify a warrant-less arrest.
An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 24, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. A seizure is an arrest, rather than an investigatory stop, when a reasonable person, in the defendant’s position would have under *650 stood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. Id. An individual is seized within the meaning of the Louisiana Constitution when either he is “actually stopped” or when an “actual stop” of the individual is “imminent.” State v. Sierra, 11-161 (La.App. 5 Cir. 12/28/11), 83 So.3d 239, 247.
An officer may make a war-rantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 212, writ denied, 00-2730 (La.8/31/01), 795 So.2d 1205. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923, 927. While mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest. State v. Wells, 08-2262, p. 8 (La.7/6/10), 45 So.3d 577, 583. Furtive actions and flight at the approach of law-enforcement officers may, when coupled with other specific knowledge, give rise to the existence of probable cause. State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 800-01, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627.
Here, defendant argues that carrying a handgun is not necessarily a crime in Louisiana so the officer lacked sufficient probable cause to arrest him. Defendant also contends that, if the officers observed the gun, then the gun was not unlawfully concealed.[6] Again, we disagree with defendant’ characterization of the facts adduced at the suppression hearing.
In this case, Detective Biondolillo observed defendant reaching for a weapon partially concealed in his waistband as defendant fled from the police. Defendant’s “furtive actions and flight at the approach of law enforcement officers” when coupled with his possession of a concealed firearm gave rise to the existence of sufficient probable cause on Detective Biondolillo’s part to effectuate an arrest. See, State v. Alvarez, 09-0328 (La.3/16/10), 31 So.3d 1022, 1023-1024 (per curiam)(offieers ... had probable cause to arrest defendant who had discarded a weapon for carrying a concealed weapon, in violation of La. R.S. 14:95, which justified officers’ warrantless entry of the apartment in hot pursuit to effectuate defendant’s arrest).
In sum, Detective Biondolillo’s reasonable suspicion ripened into probable cause to arrest defendant after he was observed fleeing with a gun, which was partially visible, as he followed a suspected drug dealer into the residence.
Furthermore, even though the police officer had probable cause to arrest defendant, we find there also existed exigent circumstances sufficient to justify the warrantless entry in this case. In determining whether sufficient exigent circumstances exist to justify the war-rantless entry and search or seizure, the court must “consider the totality' of the circumstances and the ‘inherent necessities of the situation at the time.’ ” State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215, 1224 (quotation omitted).
The United States Supreme Court has defined exigent circumstances as “a plausible claim of specially pressing or urgent law enforcement need.” Illinois v. *651 McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). Exigent circumstances are exceptional circumstances that, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances include the escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
In the present case, the detective observed defendant run into a house. The detectives did not know either defendant’s identity or the identity of the occupants of this residence. Detective Biondolillo knew, however, that there was a gun in the suspect’s possession. Detective Biondolillo moved to prevent the escape of the suspect and to protect public safety as well as himself and the other officers in this situation. Additionally, the detective wanted to prevent defendant from discarding the gun in a manner that would affect public safety-
Finding that there was no unlawful seizure or search or illegal entry into the residence before defendant abandoned the contraband that was subsequently seized, we find no error in the trial court’s denial of defendant’s motions to suppress.
If property is abandoned prior to any unlawful intrusion into a citizen’s right to be free from governmental interference, it may lawfully be seized. State v. Wilson, 10-475 (La.App. 5 Cir. 12/28/10), 56 So.3d 375, 379. In such cases, there is no expectation of privacy, and thus no violation of a person’s custodial rights. Id. It is only when a defendant is stopped without reasonable cause that the right to be left alone is violated, thereby rendering the seizure of any abandoned property unlawful. Wilson, 10 — 475 at 8-9, 56 So.3d at 379-80 (quotation omitted).
In the present case, Detective Biondolillo, who was lawfully inside of the residence, seized contraband abandoned by defendant. After defendant was eventually detained by another officer, a search of his person revealed over $5,000.00. Once defendant was arrested, the search of his person incident to that arrest was justified. See State v. Wilford, 11-256 (La.App. 5 Cir. 12/13/11), 81 So.3d 868, 875 (once a lawful arrest has been made, a warrantless search of the arrestee’s person and of the area within his immediate control is permissible in order to remove any weapons from his person and to prevent evidence from being destroyed).
In conclusion, we find that Detective Biondolillo had reasonable suspicion that ripened into probable cause under the circumstances of this case. The probable cause coupled with the exigent circumstances allowed the detective to enter the residence without a warrant and to secure the abandoned evidence left by defendant as he continued in his attempts to escape the detention. Here, the evidence was lawfully seized and not subject to suppression. This assignment of error lacks merit.
Finally, defendant requests an error patent review, which this Court routinely conducts in accordance with La. C.Cr.P. art. 920. Upon review, we note that the record is unclear as to whether defendant received a separate, individual sentence for Counts One and Two. The transcript reflects that the court sentenced defendant to “15 years in the Department of Corrections on Counts 1 and 2[.]” 11fiBecause it is unclear if defendant was sentenced to 15 years for count 1 and 15 years for count 2 or 15 years, together, for counts 1 and 2, we remand for clarification *652 of defendant’s sentence on Count One and Count Two.

REMANDED FOR CLARIFICATION OF SENTENCING ON COUNTS ONE AND TWO; AFFIRMED IN ALL OTHER RESPECTS

. Count Three of the bill of information states that defendant was previously convicted of possession of cocaine in violation of La R.S. 40:967(C) in case number 07-968 in the 24th Judicial District Court in Jefferson Parish.

. State v. Crosby, 338 So.2d 584 (La.1976).

. Only those individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections. La. R.S. 15:824(C); State v. Vance, 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, 109 n. 3, writ denied, 07-0152 (La.9/28/07), 964 So.2d 351.

. Detective James stated that he had been with the Sheriff's Office for 12 years.

. Later, at the detective bureau the officers attempted to execute an advisal of rights form with defendant but defendant refused and asked for his attorney.

. See, State v. Dyer, 388 So.2d 374, 376 (La.1980) (defendant’s guilt is based on his intent to conceal a weapon, rather that the extent of concealment).