809 So.2d 923 (2002)
STATE of Louisiana
v.
Levy BRISBAN.
No. 2000-K-3437.
Supreme Court of Louisiana.
February 26, 2002.
*925 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Charles Edwin Foster Heuer, New Orleans, Valentin M. Solino, Scott D. Peebles, Counsel for Applicant.
Pamela S. Moran, New Orleans, Counsel for Respondent.
KIMBALL, Justice.
Defendant was convicted of attempted possession of cocaine in violation of La. R.S. 40:967(C) and sentenced as a quadruple offender to twenty years imprisonment at hard labor without benefit of parole, probation, and suspension of sentence. The court of appeal reversed the conviction, finding the trial court erred in denying defendant's motion to suppress and his motion for new trial. For the reasons that follow, we find that the arresting officer was lawfully in a position to observe defendant's companion cutting cocaine on a table littered with narcotics paraphernalia, that there were exigent circumstances allowing the officer to immediately enter the residence to prevent the destruction of the evidence, and that the officer had probable cause to arrest defendant. We further find that the trial court did not abuse its discretion in denying defendant's motion for new trial. Accordingly, we reverse the *926 court of appeal's judgment, reinstate defendant's conviction and sentence, and remand the case to the court of appeal for it to consider defendant's remaining assignments of error it pretermitted on original appeal.

Facts and Procedural History
At approximately 8:30 on the morning of October 25, 1996, New Orleans Police Officer Harry O'Neil made an arrest for a drug offense at Louisiana Guest House located at 2216 Louisiana Avenue. Following the arrest, Officer O'Neil noticed that there was no one on the front porch of the apartment building next door at 2212 and 2214 Louisiana Avenue. According to Officer O'Neil's testimony taken at a subsequent hearing on a motion to suppress, this was significant to him because he customarily spoke with "several older people" who sat on the porch and they had told him "if they are not on the front porch that means that there is drug activity in the area as they don't want to be associated with it." Upon noting that the front porch was empty, Officer O'Neil walked onto the porch of the apartments to check on and talk to one of the individuals who usually sat on the porch. As he walked onto the front porch, he observed through the screen door of the apartment at 2212 Louisiana Avenue a man cutting crack cocaine with a razor blade on a coffee table littered with drug paraphernalia. The officer also saw another man, later identified as the defendant, sitting upright on a sofa behind the coffee table. When Officer O'Neil entered the residence, defendant lay on the sofa and pretended to be asleep. Officer O'Neil arrested both men and, during a search incident to the arrest, discovered two crack pipes containing cocaine residue in defendant's coat pocket. The officer also discovered a metal push rod and a razor blade in defendant's pants pocket.
On January 23, 1997, defendant was charged by bill of information with one count of possession of cocaine in violation of La. R.S. 40:967(C). Defendant subsequently filed a motion to suppress the evidence on grounds that it was obtained as the result of an illegal search. After a hearing, defendant's motion was denied by the trial court. Defendant proceeded to trial on October 15, 1997 and a jury convicted him of the lesser offense of attempted possession of cocaine. On April 20, 1998, the court sentenced defendant as a quadruple offender to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Following sentencing, defendant filed a Motion for Appeal and a Motion to Reconsider Sentence. The trial court denied the Motion to Reconsider Sentence, but granted the Motion for Appeal.
Subsequently, prior to the lodging of the full appellate record, defendant filed a pro se Motion in Arrest of Judgment, or in the alternative, Motion for New Trial based on newly discovered evidence. Specifically, defendant argued that the trial court should grant him a new trial because his counsel was unprepared for trial, and therefore ineffective, and because he had obtained an affidavit signed by his co-defendant stating that defendant was asleep when Officer O'Neil entered the residence and had no knowledge of the cocaine being in the house. The court of appeal remanded the matter to the trial court for a hearing on the motion. On May 10, 1999, the trial judge denied defendant's motion without hearing argument or testimony.
On appeal, the court of appeal reversed defendant's conviction and sentence and remanded the matter to the trial court for a new trial. The court found that the trial court erred in denying defendant's motion to suppress and his motion for a new trial. Specifically, the court found that the arresting officer never observed defendant committing any crime or participating in *927 his companion's illegal activity. The court reasoned that the officer therefore failed to articulate any reasonable suspicion that the defendant had committed a crime or was in the process of committing a crime, and concluded that the officer had no probable cause to arrest or search defendant. Additionally, the court of appeal found that the officer had no right to be on the porch and the evidence seized from defendant was obtained in violation of defendant's Fourth Amendment rights. Finally, the court, without articulating specific reasons, concluded the trial court erred in denying defendant's motion for new trial. The State filed an application for rehearing in the court of appeal, but the application was denied.
This court granted certiorari to review the judgment of the court of appeal. State v. Brisban, 00-3437 (La.11/9/01), 801 So.2d 364.[1]

Law and Discussion
In its first assignment of error, the State contends that the court of appeal erred in reversing the trial court's denial of defendant's motion to suppress. The State alleges that the court of appeal's findings that Officer O'Neil violated defendant's reasonable expectation of privacy when he entered the front porch of the apartment building and approached the front door of 2212 Louisiana Avenue, and that Officer O'Neil had no probable cause to arrest defendant were erroneous. In response, defendant argues that because Officer O'Neil had no legitimate reason to be on the front porch and because the officer never observed defendant involved in any illegal activity, the court of appeal was correct in concluding that the trial court erred in denying the motion to suppress.
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5. Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer therefore needs both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into a private premises. State v. Talbert, 449 So.2d 446 (La. 1984); State v. Hathaway, 411 So.2d 1074 (La.1982). Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or was committing a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); La. C.Cr.P. art. 213; State v. Raheem, 464 So.2d 293 (La.1985). Exigent circumstances may arise from the need to prevent the offender's escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction *928 or concealment. State v. Hathaway, 411 So.2d 1074 (La.1982).
The curtilage of a home, that "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life," is considered part of the home itself and is therefore afforded Fourth Amendment protection. Oliver v. U.S., 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984) (internal quotation omitted). The front porch of a private residence falls within the curtilage of the home and is therefore accorded Fourth Amendment protection. State v. Deary, 99-0627, p. 1 (La.1/28/00), 753 So.2d 200, 201. A front porch does not necessarily enjoy the same measure of Fourth Amendment protection that a home does, however, because of "an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking." Deary at p. 1, 753 So.2d at 201 (citing State v. Sanders, 374 So.2d 1186, 1189 (La.1979)).
In Deary, this court reaffirmed its prior holding in State v. Dixon, 391 So.2d 836 (La.1980), that "the police have the same right as other members of the public to approach the doorway of a home and see what was exposed by the owner to the view of the general populace." Deary at p. 2, 753 So.2d at 201 (internal quotation omitted). The court upheld the warrantless arrest of defendant Deary in his home based on probable cause acquired when an officer conducting a legitimate police investigation knocked on the side of defendant's house and observed through the opened front door the startled defendant drop a bag of crack cocaine. As the court noted in Deary, this holding was in accord with the great weight of authority that "police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public, and that in so doing they are free to keep their eyes open and use their other senses." Deary at p. 2, 753 So.2d at 201 (citing 1 Wayne R. LaFave, Search and Seizure, § 2.3(c), p. 483 (1996)). See also United States v. Taylor, 90 F.3d 903, 909 (4th Cir.1996) (Police observation of cocaine and currency through large picture window next to the front door where the officers were standing did not constitute an illegal search because the front entrance "was as open to the law enforcement officers as to any delivery person, guest, or other member of the public."); Davis v. United States, 327 F.2d 301, 303 (9th Cir.1964) (Police officers' view of marijuana when front door of defendant's residence opened in response to their knock lawfully gave rise to probable cause to arrest the defendant; "[a]bsent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's `castle' with the honest intent of asking questions of the occupant thereofwhether the questioner be a pollster, a salesman, or an officer of the law.").
In the present case, Officer O'Neil entered the front porch of the building to attempt to locate and speak to one of the older individuals who usually sat on the steps of the apartment complex. Officer O'Neil regularly spoke with several people who customarily sat on the steps and remembered they had told him that if they were not on the porch, then there was drug activity in the area. When he saw there was no one out, he walked onto the porch to try to locate and speak to one of the individuals who usually sat outside. The officer was therefore on the porch for a legitimate purpose when he looked *929 through the screen door and saw what appeared to be contraband. The contraband was visible to any casual visitor, and the officer's observation of it did not violate any reasonable expectation of privacy that defendant may have had in the porch. Defendant suggests that Officer O'Neil's explanation of trying to locate and speak to an unnamed individual who customarily sat on the steps of the apartment building was pretextual and designed only to justify his intrusion into defendant's home. There is no evidence to support this assertion, however, and no indication that the officer fabricated this account in an attempt to conduct an otherwise impermissible search of the residence.
When the officer, who was lawfully on the front porch for a legitimate purpose, looked through the screen door and saw defendant's companion cutting the crack cocaine, exigent circumstances created a "now or never" situation with respect to preserving evidence of a crime which justified the officer's immediate warrantless entry into the home to retrieve the cocaine and to arrest defendant's companion. See Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be `now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.").
For the above reasons, we find the officer was legitimately on the front porch and lawfully approached and entered the apartment in which defendant was present.
Turning now to whether defendant's arrest was lawful, we note that an arrest is lawful when it is based on probable cause. Thus, defendant's warrantless arrest was lawful if the facts and circumstances known to the arresting officer were sufficient to justify a man of ordinary caution in believing defendant had committed or was in the process of committing a crime. Probable cause deals with probabilities and recognizes that a degree of uncertainty may exist. Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. Id. at p. 7, 758 So.2d at 789; State v. Johnson, 422 So.2d 1125 (La.1982); State v. Davis, 407 So.2d 666 (La.1981).
The term "possession" in La. R.S. 40:967 is broad enough to encompass both actual and constructive possession. State v. Blanchard, 99-3439 (La.1/18/01), 776 So.2d 1165; State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324. It is settled, however, that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337; State v. Bell, 566 So.2d 959 (La.1990). Constructive possession may be found where the material is not in a person's physical possession, but is under his dominion and control.
A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it.... [G]uilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug.
State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). See also State v. Sweeney, 443 So.2d 522 (La.1983); State v. Trahan, 425 So.2d 1222 (La.1983).
In the instant case, Officer O'Neil reasonably concluded that defendant constructively possessed the crack cocaine and the drug paraphernalia on the table in *930 front of him. According to the officer's testimony at trial, he initially observed defendant sitting upright on the sofa an arm's length away from the coffee table where defendant's companion was cutting crack cocaine, but when he entered the apartment, defendant lay down and pretended to be asleep. These observations reasonably lead the officer to assume that defendant was aware of the drugs and paraphernalia since the table was only inches away from where defendant was sitting. Although the cocaine was in the physical custody of defendant's companion, the circumstances surrounding the actions of the two men justified the officer's belief that defendant and his companion more likely than not shared the right to control the drugs and paraphernalia and were therefore involved in criminal activity. Because defendant had the presence of mind to notice the officer and immediately pretend to be asleep, his guilty knowledge can be inferred. Based on the defendant's proximity to the drugs and paraphernalia, the officer justifiably concluded that defendant and his companion had been smoking, or were about to smoke, crack cocaine and the officer therefore had probable cause to arrest defendant. See 2 Wayne R. La-Fave, Search and Seizure, § 4.9(b), p. 630 (3rd ed. 1996) ("Even a visitor may be arrested where the evidence, such as drugs, is in plain view under circumstances indicating involvement by those present."); United States v. Holder, 990 F.2d 1327, 1329 (D.C.Cir.1993) ("That [the defendant] was present, for whatever reason, when the drugs were in plain view ... makes it more likely than not that he was involved in some way in the criminal activity, and that amply satisfies probable cause."); Italiano v. Commonwealth, 214 Va. 334, 200 S.E.2d 526, 528 (1973) (Under circumstances involving drugs in plain view, "officers are not required to choose among several suspects similarly situated, when any or all of the occupants may have committed the offense or aided and abetted in its commission."). Accordingly, the officer had probable cause to arrest and search defendant, and to seize the two crack pipes from his pocket. The court of appeal therefore erred in reversing the trial court's denial of defendant's motion to suppress the evidence.
In its second assignment of error, the State argues that the court of appeal erred in finding the defendant's pro se motion for new trial should have been granted. Specifically, the State contends that the trial court's failure to hold a hearing on the motion was not in error and that despite the companion's sworn statement that defendant had no knowledge of the cocaine on the table, the verdict would have been the same since defendant physically possessed two crack pipes containing cocaine residue. Defendant, on the other hand, contends that the trial court's failure to hold a hearing on his motion prejudiced him by depriving him of an opportunity to present evidence and witnesses to support his position that he was asleep and knew nothing of the drugs on the coffee table. Defendant argues that the testimony of his companion would have served to impeach the testimony of Officer O'Neil and could have resulted in a different verdict.
La.C.Cr.P. art. 852 provides, "A motion for a new trial shall be in writing, shall state the grounds upon which it is based, and shall be tried contradictorily with the district attorney." In the instant case, both defendant and an OIDP attorney, and counsel for the State appeared for a scheduled hearing on defendant's motion for new trial. Without hearing arguments or testimony, the trial court denied defendant's motion. In making this ruling, the trial court had before it defendant's memorandum of law in support of his motion for new trial and the affidavit signed by defendant's companion stating that defendant *931 "was asleep in the house when the police came in. Mr. Brisban had no knowledge of cocaine being in the house." Based on the circumstances presented in this case, we find that the reading of defendant's motion, along with the affidavit executed by defendant's companion, gave the trial court sufficient knowledge to enable him to intelligently dispose of the matter. A more complete evidentiary hearing was not necessary because it would have been merely repetitious of the information contained in the affidavit. See, e.g., State v. Barfield, 292 So.2d 580, 582 (La.1974) ("An evidentiary hearing was not necessary and would have merely been repetitious because of the affidavit. The judge did not abuse his discretion in denying this motion."); State v. Varnado, 154 La. 575, 97 So. 865, 868 (1923) ("If the reading of the motion imparts to [the judge] sufficient knowledge to enable him to intelligently dispose of the matter, he cannot be arbitrarily required to delay his ruling for the purpose of further hearing or argument.");[2]State v. Jackson, 570 So.2d 227, 231 (La.App. 5 Cir.1990) (finding no error in the trial court's decision not to conduct and evidentiary hearing on defendant's motion for new trial).
Regarding the merits of the motion, La.C.Cr.P. art. 851(3) provides that a new trial shall be granted whenever "[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty." Article 851(5) further provides that a new trial shall also be granted whenever "[t]he court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right." A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Cavalier, 96-3052, p. 3 (La.10/31/97), 701 So.2d 949, 951; State v. Hammons, 597 So.2d 990, 994 (La.1992); State v. Knapper, 555 So.2d 1335, 1339 (La.1990). A ruling on a motion for new trial rests within the sound discretion of the trial judge. State v. Quimby, 419 So.2d 951, 960 (La.1982). In ruling on the motion, "[t]he trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment." State v. Prudholm, 446 So.2d 729, 736 (La.1984).
Applying these precepts to the present case, it is clear the trial court did not abuse its discretion in denying defendant's motion for a new trial. The companion's testimony was not newly discovered evidence within the meaning of La. C.Cr.P. art. 851(3) because both the defendant and his companion were arrested together for the instant offense, and, therefore, defendant must have been aware of *932 this alleged exculpatory evidence prior to trial. Furthermore, defendant's companion, who executed the affidavit at issue, pled guilty as charged on May 15, 1997. Because the co-defendant pled guilty well before defendant's trial began on October 15, 1997, there was no Fifth Amendment impediment to his testimony being presented at defendant's trial.
Defendant also alleged in his motion for new trial that his counsel was ineffective as he was unprepared for trial and was only appointed to his case the night preceding trial. With regard to the time of his counsel's appointment, defendant's allegation is unsupported by the record. The Docket Master indicates that defendant appeared in court for a status hearing represented by his trial counsel, Mr. F. Valteau, on September 9, 1997, over a month before his trial. Additionally, Mr. Valteau had represented defendant's companion since May 1997. Defendant's assertion that he is entitled to a new trial based on the fact that Mr. Valteau was "generally unfamiliar with his case, [and] that he had not had time to conduct any investigation" is without merit. Defendant's remaining allegations in his motion for new trial that his counsel was otherwise ineffective, such as those directed to his counsel's unpreparedness, are referred to post-conviction proceedings. See State v. Burkhalter, 428 So.2d 449, 456 (La.1983) ("Normally on appeal we do not address assignments relative to ineffective assistance of counsel, relegating such contentions to post conviction relief applications in the district court.").
Accordingly, the court of appeal's reversal of the trial court's denial of defendant's motion for new trial was erroneous.

Decree
For the reasons discussed above, the decision below is reversed, and defendant's conviction and sentence are reinstated. Because the court of appeal's opinion pretermitted several of defendant's assignments of error, the case is remanded to the court of appeal for consideration of defendant's remaining assignments of error.
JUDGMENT REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED TO THE COURT OF APPEAL.
JOHNSON, J., dissents.
NOTES
[1] At the outset, we note that the court of appeal pretermitted several of defendant's assignments of error, reversing defendant's conviction and sentence after considering only his first and sixth assignments of error. This opinion is intended to address only those assignments of error considered by the court of appeal and does not express any opinion regarding defendant's assignments of error not addressed by the court of appeal on original appeal.
[2] Although there was no statutory authorization of defendant's right to request a new trial in State v. Varnado, 154 La. 575, 97 So. 865 (1923), and all procedural "rules" regarding the motion were derived from case law, we believe this court's pronouncement that the method of hearing motions for new trial is left to the judge and if the motion itself gives him sufficient information to allow him to intelligently dispose of the matter, he cannot arbitrarily be required to delay ruling for the purpose of further hearing or argument remains soundly reasoned.