PER CURIAM.[1]
| granted. The ruling of the district court granting the defendant’s motion to suppress drug and paraphernalia evidence seized from a residence is reversed; this case is remanded for further proceedings.
The Louisiana and Federal constitutions prohibit unreasonable searches and seizures. State v. Lee, 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122; see U.S. Const, amend. IV and La. Const, art. I, § 5. Therefore, the pivotal question in this case is whether the police officers acted reasonably in the following series of events: 1) entering the front yard of a residence with an open front door and standing at the door; 2) announcing their presence and asking if anyone was inside; 3) hearing no response to their announcement, further pushing the door open; 4) viewing lit candles inside; 5) then entering the residence to extinguish the candles to prevent a fire; and 6) seizing contraband the officers viewed while extinguishing the candles. Given only these facts, we might well have found the third action by police of further pushing the door open unreasonable. See Lee, 05-2098 at 14-15, 976 So.2d at 122 (“Warrants ... are generally required to search an individual’s home or person, ‘unless “the exigencies of the situation” make the needs of law enforcement so compelling that the warrantless search is objectively reasonable Runder the Fourth Amendment.’ ”). However, as found by the district court, these were not the only facts and circumstances prompting the officers to push the door open further. The district court erred in not considering the totality of the circumstances when ruling on the defendant’s motion to suppress drug evidence seized from the residence at the end of the above-described series of events. See State v. Bush, 12-0720, p. 1 (La.6/1/12), 90 So.3d 395, 396 (describing the standard on motion to suppress for admissibility of evidence seized without a warrant as a “totality of the circumstances” test).
The series of events just recounted was preceded by the defendant’s arrest stemming from an encounter with police officers in the street in front of the residence. The arrest itself was the result of a lengthy series of events, which included a traffic stop and the defendant fleeing the scene on foot and being subdued by a taser. However, for present purposes and in the interest of brevity, the most significant events in the first series, ie., the earlier series of events occurring on the street outside the residence, included: 1) the defendant making the unsolicited statement to police officers that the residence was his, but he did not live there because the residence was under renovation; 2) police officers observing from their vantage point on the street that the *403 front door of the residence was partially open; 8) a search incidental to the arrest yielded a substantial amount of drugs and over $4,000 in currency; 4) the defendant’s identification, also seized incidental to the arrest, indicated the residence with the open door to be the defendant’s residence.
With these facts from the first series of events serving as predicates (so as to assist in evaluating the totality of the circumstances), we return to the actions taken by police officers at the residence to determine whether those actions were | sreasonable. See Lee, 05-2098 at 14, 976 So.2d at 122. This court has explained the basic standard for evaluating the reasonableness of police officers entering a residence without a warrant:
Warrantless entries into the home for arrest or seizure are invalid in the absence of exigent circumstances. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1871, 63 L.Ed.2d 639 (1980). The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer therefore needs both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into a private premises. State v. Talbert, 449 So.2d 446 (La.1984); State v. Hathaway, 411 So.2d 1074 (La.1982).
State v. Brisban, 00-3437, p. 5 (La.2/26/02), 809 So.2d 923, 927. Measured against this standard, we find each of the six actions by police officers at the residence to be reasonable and, therefore, not offensive to the Fourth Amendment or to La. Const, art. I, § 5, as follows.
First, police officers may approach the front door of a residence, just as members of the public may do so. In Brisban, we explained that when a residence has a front porch, police officers may access the front door:
The front porch of a private residence falls within the curtilage of the home and is therefore accorded Fourth Amendment protection. State v. Deary, 99-0627, p. 1 (La.1/28/00), 753 So.2d 200, 201. A front porch does not necessarily enjoy the same measure of Fourth Amendment protection that a home does, however, because of “an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.” Deary at p. 1, 753 So.2d at 201 (citing State v. Sanders, 374 So.2d 1186, 1189 (La.1979)).
In Deary, this court reaffirmed its prior holding in State v. Dixon, 391 So.2d 836 (La.1980), that “the police have the same right as other members of the public to approach the doorway of a home and see what was exposed by the owner to the view of the general populace.” Deary at p. 2, 753 So.2d at 201 (internal quotation omitted).
Brisban, 00-3437 at 5-6, 809 So.2d at 928. Here, the police officers had legitimate concerns about the security of the residence because the door was open, it was 14night time, and the police officers had just arrested a person claiming to be the owner of the residence. So, the police officers acted reasonably and lawfully in approaching the front door.
Second, it was reasonable for the police officers to announce their presence through the residence’s partially open door. Although defendant urges that the only permissible course of police action at this point was to close the door, neither the facts of this case nor the constitutional jurisprudence restricted the police officers to that singular course of action. At the hearing on the motion to suppress, the officers testified that this particular residence was known to them for complaints of *404 trespass and burglary. Because the police officers were lawfully at the front door to secure the residence, it was both prudent and constitutionally permissible for them to call out through the open door to better ascertain if the residence was indeed secure. As this court previously explained: “police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public, and ... in so doing they are free to keep their eyes open and use their other senses." Brisban, 00-3437 at 6, 809 So.2d at 928, quoting Deary, 99-0627 at 2, 753 So.2d at 201 (emphasis added).
Third, and similarly, it was permissible for the police officers to push the partially open door open further, so they could see if the residence was secure. Although it was prudent for the police officers to first call out, the lack of a response to the announcement that the police were at the front door hardly excludes the possibility of a burglary or trespass taking place inside. Even without entering the residence — police did not yet enter at the point of opening the door further — it was reasonable to expect the police officers could glean much information about the security of the house by viewing the area just inside the | impartially open door. See Brisban, 00-3437 at 6, 809 So.2d at 928. Thus, the fact that the door was partially open is central to the justification for the police to see inside, without actually entering, when the police already have concerns for the security of the residence.[2]
The fact the door was partially open is important not only for the practicalities of police work, but also for reasons at the heart of the search and seizure doctrine. A door that is unattended and open to the public diminishes the expectation of privacy for what is inside. See, e.g. United States v. Thompson, No. 2:09-cr-00064, 2012 WL 2375541, at *3 (S.D.W.Va. June 22, 2012) (“ ‘[A] guest in a [mjotel room is entitled to constitutional protection against unreasonable searches and seizures’ ..., though his expectation of privacy is almost certainly diminished by leaving the motel room door wide open.”) quoting Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); see also, e.g., United States v. Davis, 565 F.Supp.2d 841, 873 (N.D.Ohio 2008) (noting “the Defendant had a diminished expectation of privacy because his front door was standing open and there was no glass in his storm door.”). Therefore, given a diminished expectation of privacy from the front door being open and the legitimate concerns about the security of the residence from prior trespasses and burglaries, it was not unreasonable for police officers to push the door open further to better ascertain whether the residence had been again burglarized or what the security situation may be. See State v. Jackson, 09-1983, p. 6 (La.7/6/10), 42 So.3d 368, 372 (“‘there must be an invasion of someone’s rights to privacy before there can be an unreasonable |fisearch.’ ... The test of when that intrusion occurs as a matter of the Louisiana constitution is identical to the Fourth Amendment standard, i.e., the person must possess an objectively reasonable expectation of privacy in the area.”) (citations omitted).
*405 The fourth relevant action by the police officers was viewing the lit candles inside the residence, after they had further opened the door. This action was not a search and does not, therefore, require constitutional scrutiny. See State v. Benoit, 01-2712, p. 4 (La.5/14/02), 817 So.2d 11, 14 (“[T]he term [search] implies some exploratory investigation, or an invasion and quest, a looking for or seeking out.”); see also 79 C.J.S. Searches and Seizures § 8,18-19.
The fifth action by the police officers was entering the residence to extinguish the candles to prevent a fire. It is black-letter law that “[assuming the police are lawfully on the premises for the purpose of protecting property, they may take appropriate steps consistent with that purpose.” 3 Wayne R. LaFave, Search & Seizure § 6.6 (4th ed.2004). Once the police identified the risk of fire from the unattended candles burning in the residence, it was appropriate and, therefore, reasonable, for the police to enter the residence to extinguish them. See Id.; see also Kentucky v. King, — U.S. -, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011); Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (Notwithstanding that searches and seizures inside a home without a warrant are presumptively unreasonable, the presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness.).
The sixth and last action of the police officers this case requires us to evaluate is whether the police lawfully seized drug and paraphernalia evidence that 17they encountered while extinguishing the candles. The actual seizure was accomplished under a warrant, sought in court after the police had viewed the evidence. Therefore, because a warrant cannot be predicated solely upon the observations made during an illegal search (see State v. Culotta, 343 So.2d 977, 982 (La.1976)), and “a search is not to be made legal by what it turns up,” (United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948)), the validity of the search and seizure pursuant to the warrant turns on whether the police officers acted lawfully when they first observed contraband.
We find that the police officers acted within constitutional limits. As already noted, it was reasonable under the circumstances for the police to enter the residence and to extinguish the candles. The police officers testified that as they entered to extinguish the candles, without any close inspection, they observed a blue bin with a substance appearing to be cocaine and, alongside the blue bin, they observed plastic “baggies,” which are often used in the distribution of cocaine. “Police may seize evidence under the ‘plain view* doctrine when: 1) there is prior justification for police to be at the place where the evidence can be viewed, and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband.” Bush, 12-0720 at 1-2, 90 So.3d at 396. Therefore, just as it would have been permissible for the police to immediately seize these items, it was permissible to obtain a warrant for their seizure because the probable cause requirement was satisfied in either situation. See La. C.Cr.P. art. 162(A) (the issuance of a warrant is predicated upon probable cause); compare Bush, 12-0720 at 2, 90 So.3d at 396 (“[A] seizure is reasonable under the ‘plain view’ doctrine if the officer has probable cause to believe the item seized was associated with criminal activity.”).

. Kimball, C.J., not participating in the decision.

. In a contrasting situation, where a federal law enforcement officer encountered a closed door to a cabin with no padlock, and the officer actually entered the cabin believing that a burglary may have occurred, the court supported the officer's viewing the inside of the cabin from the doorway as a minimal and permissible course of action for evaluating the situation: "To the extent the entry was for the purpose of verifying a break-in, it is hard to see how more than a look from the doorway was needed.” United States v. Moss, 963 F.2d 673, 679 (4th Cir.1992).