PER CURIAM.
| iWrit granted.
The district court suppressed drug and firearms evidence seized from a building in a residential neighborhood. The evidence was seized pursuant to a . search warrant. The district court found that prior to obtaining the warrant, the police trespassed when they eschewed knocking on the front door and instead went , to a side door to knock and announce their presence. Because the request for a search warrant was based on drug and gun evidence the police observed during a protective sweep of the building, the district court ruled that the warrant was the product of an unlawful search. Having determined the police were trespassing when they entered the side yard to knock on the side door, the district court deemed all evidence (including a statement defendant Orlin Lewis made at the police station) obtained after-wards to be fruit of the poisonous tree. In addition to suppressing the evidence, the district court ruled that there was no probable cause.
However, it is black-letter law that “the police have the same right as other members of the public to approach the doorway of a home and see what was exposed by the owner to the view of the general populace.” State v. Brisban, 00-3437, p. 6 (La.2/26/02), 809 So.2d 923, 928 (quoting State v. Deary, 99-0627, p. 2 (La. [1/28/00),2 753 So.2d 200, 201); State v. Dixon, 391 So.2d 836, 838 (La.1980). Even an area around a building that is otherwise considered to be part of the “curtilage” (i.e., the “area to which extends the intimate activity associated with the sanctity of a man’s home and the privacies of life”) may be entered by the' police if that area is also open to the public. Brisban, 00-3437 at 5, 809 So.2d at 928 (quoting Oliver v. U.S., 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)).
Here, unrefuted testimony established that the front door of the building *983 was chained shut with a lock affixed, which apparently could only be unlocked from the outside. Two police officers were at the front door following up on a Crimes-toppers’ tip of narcotics activity. An officer standing at the front door detected the smell of burning marijuana. That smell justified further investigation and the police observed that the side gate to the backyard was open, and there was a side entrance to the building. Because the front door was chained shut, the police reasonably concluded the side entrance (visible and accessible through an open gate) was the only feasible and public entrance to the building. See Brisban, 00-3437 at 6, 809 So.2d at 928; see also State v. Washington, 12-2203, p. 5 (La.11/16/12), 104 So.3d 401, 404 (even as to the entrance of a residence itself, if the entrance “is unattended and open to the public” that “diminishes the expectation of privacy for what is inside.”).
Similarly, there was no unreasonable intrusion by the police in knocking on the door to ask to speak to someone inside. See State v. Sanders, 374 So.2d 1186, 1188 (La.1979) (“When the door is opened in response to a knock, it is a consent of the occupant to confront the caller. There is no compulsion, force or coercion involved in the latter situation.”); see also State v. Warren, 05-2248, p. 6 (La.2/22/07), 949 So.2d 1215, 1222 (plurality op’n) (“The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official | ^business, are permitted to approach one’s dwelling and seek permission to question an occupant.”).
Based on the commotion inside the building the police heard after knocking and announcing their presence, the earlier smell of marijuana, and the continuing commotion of several individuals the police could only dimly see once the door was opened, the police then acted reasonably in directing the individuals to exit and detaining them, and conducting a protective sweep. Because the police were unsure if all occupants had actually exited, the sweep was justified for officer safety and to prevent evidence from being destroyed. See Kentucky v. King, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) (“the need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search.”) (internal quotation omitted); see also Warren, 05-2248 at 2-3, 18, 949 So.2d at 1220, 1229 (finding, when the police smelled and saw marijuana once defendant opened his door, that because “[gjuns and drugs irequently go hand-in-hand ... [t]he officers ... acted reasonably in assuming as much and in conducting a protective sweep for weapons”).
In sum, the police acted reasonably while in places where they were lawfully entitled to be. The search-warrant, which was predicated upon drug and firearm evidence the police observed during the protective sweep, was thus not tainted by an unconstitutional search. Relatedly, the statement defendant Lewis made at the police station was not the product of an earlier unconstitutional search. Applying well-established constitutional standards to the evidentiary record, we find the district court’s ruling, suppressing evidence and finding no probable cause, was an abuse of discretion. See La.C.Cr.P. art. 703(A) (suppression of evidence is predicated upon the evidence béing “unconstitutionally obtained.”); La.C.Cr.P. art. 296 (relief following a preliminary examination is predicated upon an “appear[ancej that there Lis not probable cause to charge [the defendant] with the offense or with a lesser included offense.”).
*984 JOHNSON, C.J., would deny the writ.
HUGHES, J., would deny the writ.