STATE OF LOUISIANA

VERSUS

KEVIN BARKER

NO. 19-KA-223

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-6405, DIVISION "B"
HONORABLE CORNELIUS E. REGAN, JUDGE PRESIDING


December 11, 2019


**JUDE G. GRAVOIS**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Hans J. Liljeberg


<u>**AFFIRMED**</u>
    **JGG**
    **FHW**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
        Paul D. Connick, Jr.
        Terry M. Boudreaux
        Andrea F. Long
        Meredith Hearn

COUNSEL FOR DEFENDANT/APPELLANT,
KEVIN BARKER
        Davidson S. Ehle, III

**GRAVOIS, J.**

Defendant, Kevin Barker, appeals his conviction and sentence for possession with intent to distribute methamphetamine weighing less than twenty-eight grams, following the trial court's denial of his motion to suppress evidence. For the following reasons, we affirm defendant's conviction and sentence.

## PROCEDURAL HISTORY AND FACTS

On October 23, 2018, the Jefferson Parish District Attorney filed a bill of information charging defendant, Kevin Barker, with possession with intent to distribute methamphetamine weighing less than twenty-eight grams, in violation of La. R.S. 40:967(A). Derrick Jones was charged as a co-defendant in the same bill of information. Defendant entered a plea in absentia of not guilty at his arraignment on November 19, 2018.[1] On that same date, defendant filed omnibus motions, including a motion to suppress evidence. On February 11, 2019, the trial court heard only defendant's motion to suppress evidence.[2] On February 19, 2019, the trial court denied the motion to suppress.

On March 14, 2019, defendant withdrew his not guilty plea and pled guilty as charged pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976). After informing defendant of his *Boykin*[3] rights and accepting his *Crosby* plea, the trial court sentenced defendant to four years imprisonment at hard labor, suspended the sentence, and placed him on three years of active probation. On March 20, 2019, defendant filed a motion for an appeal, which was granted on March 21, 2019. Defendant's appeal follows where he challenges the trial court's denial of his motion to suppress evidence.

---

[1] On that same date, a Motion, Affidavit and Order to Waive Defendant's Presence at Arraignment was filed into the record. Per La. C.Cr.P. art. 832, a defendant may waive his presence at arraignment.

[2] The remainder of defendant's omnibus pretrial motions, such as a motion to suppress a confession and identification, were not heard. When a defendant fails to object to the trial court's failure to hear or rule on a pretrial motion before pleading guilty, the motion is considered waived. *See State v. Corzo*, 04-791 (La. App. 5 Cir. 2/15/05), 896 So.2d 1101, 1102. Here, because defendant did not object to the trial court's failure to hear or rule on his other pre-trial motions, any objection thereto is waived.

[3] *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

Because defendant pled guilty, the facts of his case were not fully developed at a trial. The bill of information provides that on or about October 4, 2018, defendant knowingly or intentionally possessed with intent to distribute methamphetamine weighing less than twenty-eight grams.

At the February 11, 2019 suppression hearing, Detective Allan Doubleday with the Jefferson Parish Sheriff's Office testified that on October 4, 2018, at approximately 11:00 a.m., he went to the Boomtown Casino located on Peters Road in Jefferson Parish after he received information that morning from a known confidential informant ("CI").[4] The CI provided that defendant would deliver "a quantity of methamphetamine and liquid methamphetamine" to the casino and that he would arrive at approximately 11:00 a.m. in an Uber accompanied by a black male. The CI did not know the name of the black male, but he or she provided screenshots of both individuals.[5]

With this information and due to time constraints, Detective Doubleday went to the casino and established surveillance. As he waited for the suspects to arrive, Detective Doubleday was able to monitor their Uber on the Uber app, and the CI also sent Detective Doubleday a text message indicating that the suspects would be arriving at the casino soon. Detective Doubleday then observed defendant and the black male from the previously provided screenshots arrive in an Uber. Both defendant and the black male carried backpacks, and as predicted by the CI, walked to the lobby of the casino near the elevator "where the meet was supposed to happen." At that point, the suspects were detained and brought outside of the casino to the parking lot.[6] Based on the CI's information and his corroboration of that information, Detective Doubleday believed that defendant was about to

---

[4] Detective Doubleday testified that he had worked with this CI before and the CI was paid after the investigation.

[5] Detective Doubleday could not recall whether the photographs of the suspects came from "Grinder" or another social media application.

[6] Detective Doubleday denied that the suspects appeared nervous or attempted to discard their backpacks.

commit a crime. Detective Doubleday *Mirandized*[7] both defendant and the black male, who was identified as Derrick Jones (the co-defendant).

Detective Doubleday testified that Mr. Jones waived his *Miranda* rights and elected to speak with him while defendant remained silent. Mr. Jones proceeded to inform Detective Doubleday that he had arrived in Louisiana from Oklahoma a few weeks earlier and was living with defendant in an apartment. During that time, he learned that defendant was distributing methamphetamine from that location. He further provided that defendant had asked him that morning to travel with him to deliver a quantity of methamphetamine, and when they went to leave their apartment, defendant asked Mr. Jones to hold the methamphetamine while they traveled to the casino. Mr. Jones stated that he had placed the methamphetamine in a candy box inside of his backpack. Detective Doubleday testified that after Mr. Jones said that the methamphetamine was in a candy box inside of the backpack, the backpack was searched.[8] Detective Doubleday subsequently discovered a bag of crystal methamphetamine and also liquid methamphetamine.[9] Defendant did not have any contraband in his backpack or on his person.

After Detective Doubleday's testimony concluded, defendant argued that there was not any corroboration of the information provided by the CI. He averred that defendant was arrested without any probable cause when he was stopped at the elevator in the casino lobby before any true corroboration of the tip occurred. He urged that the arrest was illegal and that the evidence seized thereafter should be

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[8] Detective Doubleday provided contradicting information as to whether Mr. Jones consented to a search of his backpack. He was asked: "Mr. Jones on the other hand at that point in the parking lot after he was detained gave you consent; is that right?" Detective Doubleday responded: "Correct." However, he thereafter denied that Mr. Jones was asked for consent to search his bag or executed a written consent form but rather, "[h]e told us it was in his bag."

[9] During cross-examination, Detective Doubleday denied knowing that the liquid methamphetamine "came back negative" after it was tested. The Arrest Report and Probable Cause Affidavit indicates that sixteen grams of "a crystal like substance that tested positive for methamphetamine" was discovered, as well as "a clear liquid, that tested positive for methamphetamine with an approximate weigh of 10 milliliters."

suppressed. The State responded that the CI's specific information as to the drug deal provided Detective Doubleday with probable cause to arrest defendant and that Mr. Jones did not need to consent to a search of his backpack as the backpack was searched incident to Mr. Jones' arrest.

The trial court took the matter under advisement. On February 19, 2019, the trial court denied the motion to suppress evidence, noting that it had listened to the testimony of Detective Doubleday. Defendant objected to the ruling, but stated no particular grounds for his objection.

In his only assignment of error on appeal, defendant argues that the trial court erred in denying his motion to suppress evidence. Defendant argues that Detective Doubleday did not have reasonable suspicion to detain him, nor did he have probable cause to effectuate an arrest. More specifically, defendant argues that the tip provided by the CI did not establish reasonable suspicion to detain defendant, nor was there probable cause for his arrest. Defendant alleges that although some predicative information was correct, none of his behavior was suspicious, there was no corroborating behavior, and the CI's veracity and reliability are unknown. Defendant additionally argues that the searches of his and Mr. Jones' backpacks were illegal and therefore the evidence seized from Mr. Jones' backpack should be suppressed.

The State responds that the trial court properly denied the motion to suppress evidence, as the suppression hearing testimony shows that the CI's tip accurately predicted defendant's future conduct in sufficient detail to justify an investigatory stop. The State avers that Detective Doubleday's reasonable suspicion ripened into probable cause to arrest upon a statement made by Mr. Jones. Lastly, the State asserts that the searches of the backpacks were lawfully conducted incident to an arrest, and that the methamphetamine would inevitably have been discovered during an inventory search of the backpacks.

## LAW AND ANALYSIS

In the instant case, defendant entered a guilty plea pursuant to *Crosby*, *supra*. While a plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, a plea under *Crosby* allows appellate review if, at the time the plea is entered, the defendant expressly reserves his right to appeal a specific adverse ruling in the case. *State v. Overstreet*, 18-380 (La. App. 5 Cir. 12/27/18), 263 So.3d 1241, 1246, *writ denied*, 19-0235 (La. 4/29/19), 268 So.3d 1033; *State v. Turner*, 10-995 (La. App. 5 Cir. 9/27/11), 75 So.3d 491, 492, *writ denied*, 11-2379 (La. 4/27/12), 86 So.3d 625.

The record does not reflect a specific ruling defendant desired to preserve for review. A defendant's failure to specify which pretrial ruling he desires to reserve for appeal as part of a guilty plea entered under *Crosby* may limit the scope of appellate review, but does not preclude review altogether. *State v. Joseph*, 03-315 (La. 5/16/03), 847 So.2d 1196 (*per curiam*). Absent a detailed specification of which adverse pretrial rulings the defendant reserved for appellate review as part of his guilty plea, an appellate court should presume that the *Crosby* reservation preserves review of those evidentiary rulings which "go to the heart of the prosecution's case," such as the denial of a motion to suppress, and not rulings that may affect the conduct of the trial but do not substantially relate to guilt, such as the denial of a continuance or a severance. *Joseph*, 847 So.2d at 1196-97.

Considering the foregoing, we find that the denial of defendant's motion to suppress is properly before this Court on appeal. *See Overstreet*, 263 So.3d at 1246.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. *State v. Burton*, 11-1023 (La. App. 5

Cir. 5/22/12), 98 So.3d 375, 379, *writ denied*, 12-1422 (La. 1/11/13), 106 So.3d 547.

In a hearing on a motion to suppress, the State has the burden to establish the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. *State v. Bellow*, 07-824 (La. App. 5 Cir. 3/11/08), 982 So.2d 826, 829.

The right of law enforcement officers to stop and interrogate those reasonably suspected of criminal activity is recognized by La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Belton*, 441 So.2d 1195 (La. 1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The *Terry* standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense, and demand that the person identify himself and explain his actions. *State v. Molette*, 11-384 (La. App. 5 Cir. 11/29/11), 79 So.3d 484, 489.

"Reasonable suspicion" necessary to conduct an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. *State v. Triche*, 03-149 (La. App. 5 Cir. 5/28/03), 848 So.2d 80, 84, *writ denied*, 03-1979 (La. 1/16/04), 864 So.2d 625. In making the determination of whether a police officer had reasonable suspicion, a reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. *Molette*, 79 So.3d at 489.

Whether an informant's tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); *State v. Nelson*, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 801, *writ denied*, 02-2090 (La. 2/21/03), 837 So.2d 627. The United States Supreme Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. *Id.* This Court has held that a tip by an informant can supply reasonable suspicion if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the illegal activity. *State v. Murphy*, 14-437 (La. App. 5 Cir. 10/15/14), 181 So.3d 1, 7. The informant's ability to predict the person's future behavior goes to the informant's reliability because it demonstrates inside information and a special familiarity with the person's affairs. In addition, the tip must be corroborated. *Id.* "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *State v. Tovar*, 03-513 (La. App. 5 Cir. 10/15/03), 860 So.2d 51, 54-55.

In *State v. Anthony*, 07-204 (La. App. 5 Cir. 11/27/07), 971 So.2d 1219, 1226, *writ denied*, 08-0338 (La. 1/16/09), 998 So.2d 98, the CI informed the police that a black male nicknamed "Twin" would be delivering crack cocaine to the Oasis Motel located at 70 Westbank Expressway in Gretna. The informant stated that "Twin" would be driving a newer-model, black Pontiac Grand Prix with chrome rims. *Id.* at 1223. The police set up surveillance, and approximately twenty to thirty minutes after the call, police observed a black Grand Prix with three occupants enter the Oasis Motel parking lot. *Id.* The officers converged on

the vehicle, stated that they were the police, ordered the driver to turn off the vehicle, and ordered the occupants to exit the car. *Id*. This Court found that the CI, who had previously provided information that aided in apprehensions and convictions, provided a specific description of the vehicle, the vehicle's driver, and the location of where the delivery of the drugs would take place. Within twenty minutes of the tip, the police corroborated the reliable CI's tip with surveillance of the Westbank Expressway and the motel's parking lot, which this Court found gave the police reasonable suspicion to stop the defendants. *Id*. at 1226.

Upon review, we find that Detective Doubleday had reasonable suspicion to conduct an investigatory stop of defendant. Detective Doubleday provided that he has worked with this CI in the past. The CI provided the detective with defendant's name, a photograph of defendant, that he would sell methamphetamine, his mode of transportation, the time and location of his arrival to the drug transaction, that he would be traveling with a black male, and a photograph of the black male. The CI was also able to inform Detective Doubleday that defendant would soon arrive at the casino when he was en route, which the detective was able to monitor and confirm himself. Upon defendant's arrival, in an Uber as described by the CI, Detective Doubleday was able to confirm defendant and the black male were the previously described suspects, and the CI had also described that defendant would approach the elevators inside the casino. The only information contained in the CI tip which was not accurate was that Mr. Jones, rather than defendant, would carry the methamphetamine. However, Mr. Jones explained that defendant had asked him to carry the methamphetamine.

Considering the above, we find that the CI's tip accurately predicted defendant's future conduct with in-depth details sufficient to support a reasonable belief that the CI had inside information and a special familiarity with defendant's

affairs. The CI's information was sufficiently corroborated by the surveillance by Detective Doubleday. Therefore, under the totality of the circumstances, we find that the CI's tip was sufficient to justify an investigatory stop of defendant after he observed defendant's arrival to the location with Mr. Jones and in an Uber.

Defendant further argues that Detective Doubleday did not have probable cause to arrest him without a warrant. An arrest occurs when the circumstances indicate intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. *State v. Bazley*, 09-358 (La. App. 5 Cir. 1/11/11), 60 So.3d 7, 24, *writ denied*, 11-0282 (La. 1/17/11), 63 So.3d 1039. A seizure is an arrest, rather than an investigatory stop, when a reasonable person in the defendant's position would have understood the situation to be a restraint on freedom of movement of the degree that the law associates with a formal arrest. *State v. Cojoe*, 01-2465 (La. 10/25/02), 828 So.2d 1101, 1104. Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority, no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion, from arrests based on probable cause. *Id.* at 1103; *Bazley*, 60 So.3d at 24. The Louisiana Supreme Court has held that an investigatory stop does not turn into an arrest when detainees are read their constitutional rights. *See State v. Thompson*, 11-0915 (La. 5/8/12), 93 So.3d 553, 570 ("[W]e cannot fault the officer for providing Thompson with greater protection that he might otherwise have had in an investigatory stop.").

An officer may make a warrantless arrest when the officer has probable cause to believe that the person to be arrested has committed an offense. *State v. Gibson*, 12-350 (La. App. 5 Cir. 10/30/12), 103 So.3d 641, 650; *State v. Davis*, 00-278 (La. App. 5 Cir. 8/29/00), 768 So.2d 201, 212, *writ denied*, 00-2730 (La.

8/31/01), 795 So.2d 1205. Probable cause to arrest exists when the facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime or was committing a crime. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So.2d 923, 927. While mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest. *State v. Wells*, 08-2262 (La. 7/6/10), 45 So.3d 577, 583.

After defendant and Mr. Jones were stopped inside the casino, they were relocated and brought outside of the casino to the parking lot, and Detective Doubleday testified that both defendant and Mr. Jones were detained at that point and *Mirandized* as he believed a crime, likely the actual distribution of the drugs, was about to occur. Detective Doubleday did not provide if the suspects were handcuffed or restrained, but immediately after their detention, Mr. Jones waived his *Miranda* rights and stated that defendant had asked him that morning to travel with him to the casino to deliver the methamphetamine, which was located in his backpack. Undoubtedly, at that point in the investigation, Detective Doubleday had probable cause to arrest both Mr. Jones, as he admitted that he had the drugs, and defendant, as it was clear that he and Mr. Jones were working together to distribute the methamphetamine.[10] Considering Mr. Jones' statement coupled with Detective Doubleday's observations confirming several aspects of the CI tip, we find that Detective Doubleday had probable cause to conduct a warrantless arrest of defendant.

As his final argument, defendant asserts that the searches of his and Mr. Jones' backpacks were performed illegally following their arrests. Defendant

---

[10] The term "possession" in La. R.S. 40:967 is broad enough to encompass both actual and constructive possession. *Brisban*, 809 So.2d at 929. A person may be in constructive possession of a drug even if it is not in his physical custody, but rather only the subject of his dominion and control. *Id.* Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control of it. *Id. See also State v. Smith*, 250 La. 1109, 1114, 245 So.2d 327, 329 (La. 1971).

suggests that Detective Doubleday did not have a warrant, nor did either of them consent to a search.

As to the search of Mr. Jones' backpack,[11] we find the search was lawful pursuant to Mr. Jones' arrest. A search incident to a lawful arrest is a well-recognized exception to a warrantless search. *State v. Grimes*, 09-2 (La. App. 5 Cir. 5/26/09), 16 So.3d 418, 423, *writ denied*, 09-1517 (La. 3/12/10), 28 So.3d 1023. In a search incident to a lawful arrest, a police officer can search the suspect's person and the area within his immediate control in order to remove weapons and prevent destruction of evidence. *State v. Murray*, 17-534 (La. App. 5 Cir. 3/14/18), 242 So.3d 821, 830. It is irrelevant that the actual custodial arrest of defendant may have taken place after the methamphetamine was found in Mr. Jones' backpack. *See State v. Melton*, 412 So.2d 1065, 1068 (La. 1982) ("When there is probable cause but no formal arrest, a limited search to preserve evidence is justified.").

Upon review, we find that the search of Mr. Jones' backpack, which yielded the only contraband in this case, was a lawful search incident to arrest performed by Detective Doubleday in order to prevent the removal or destruction of evidence from the scene due to Mr. Jones' statement that the backpack contained drugs.[12] The incident happened quickly, and Detective Doubleday testified that both suspects were wearing backpacks. Further, Mr. Jones' consent to search was not required. As discussed, Detective Doubleday had probable cause to arrest Mr. Jones when he stated that he was carrying the methamphetamine in his backpack,

---

[11] Defendant has standing to challenge the search of Mr. Jones' backpack, as he was adversely affected by the search. Under federal law, a person has no standing to challenge an illegal search and seizure of a third party's property; conversely, in Louisiana, any person adversely affected by an illegal search or seizure shall have standing to raise its illegality. *State v. Bone*, 12-34 (La. App. 5 Cir. 9/11/12), 107 So.3d 49, 63 n. 19, *writ denied*, 12-2229 (La. 4/1/13), 110 So.3d 574.

[12] There was no explicit testimony that the methamphetamine was in the candy box inside the backpack, only that it was inside the backpack. Nonetheless, a search of the candy box would still be valid pursuant to a search incident to an arrest, as it was within Mr. Jones' immediate control and would have contained the contraband.

and the record does not show that the search was performed before his statements were made.[13]

In conclusion, Detective Doubleday had reasonable suspicion to conduct an investigatory stop of defendant after conducting surveillance and corroborating the information contained in the detailed tip from a known CI. Detective Doubleday further had probable cause to arrest defendant upon Mr. Jones' voluntary statement that he had methamphetamine in his backpack and was asked by defendant to carry the drugs to the casino to be distributed. Finally, Mr. Jones' backpack was lawfully searched pursuant to his arrest, and thus, the methamphetamine was legally seized. Therefore, we find that the trial court did not abuse its discretion in denying defendant's motion to suppress evidence.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). We find no errors requiring corrective action.

## CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed.

## AFFIRMED

---

[13] Although defendant challenges the search of his backpack, defendant was not adversely affected by the search as no evidence was found therein.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 11, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-223

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE CORNELIUS E. REGAN (DISTRICT JUDGE)
DAVIDSON S. EHLE, III (APPELLANT)          TERRY M. BOUDREAUX (APPELLEE)          ANDREA F. LONG (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED
HON. PAUL D. CONNICK, JR. (APPELLEE)
MEREDITH HEARN (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053